## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SANDRA RUMANEK,                        )
                                       )
          Plaintiff,                   )
                                       )
v.                                     )      Civil Action No. 12-759-SRF
                                       )
INDEPENDENT SCHOOL                     )
MANAGEMENT, INC.,                      )
                                       )
          Defendant.                   )

## MEMORANDUM OPINION

### I.    INTRODUCTION

Presently before the court in this retaliation action brought under the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Americans with Disabilities Act of 1990

("ADA"), 42 U.S.C. § 12101, *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §

2601, *et seq.*, the Delaware Discrimination in Employment Act ("DDEA"), 19 *Del. C.* § 711, *et

seq.*, and the Delaware Persons with Disabilities Employment Protections Act ("DPDEP"), 19

*Del. C.* § 720, *et seq.*, is the motion for summary judgment of defendant Independent School

Management, Inc. ("ISM" or "Defendant"). (D.I. 96) For the following reasons, the court shall

grant-in-part and deny-in-part ISM's motion for summary judgment.[1]

### II.   BACKGROUND

#### A.    Rumanek's Employment with ISM

ISM is a Delaware corporation that provides advice and assistance to private schools on

various management issues. (D.I. 66 at ¶ 9; D.I. 71 at ¶ 9) ISM's employee handbook sets forth

---

[1] On August 2, 2012, the parties consented to the jurisdiction of the undersigned magistrate
judge. (D.I. 15)

a progressive discipline policy. (D.I. 110, Ex. 1 at 23:14 – 24:1)  The progressive discipline

policy provides that an employee will typically be given a verbal warning first, followed by a

written reprimand, unpaid time off from work, and ultimately, termination. (*Id.* at 24:2-6)  The

policy further provides that "ISM reserves the right to bypass disciplinary steps and base its

disciplinary action on the severity, frequency or combination of infractions when circumstances

warrant immediate action." (*Id.* at 24:9-13)  Under the policy, ISM reserves the right to

discharge employees at any time. (*Id.* at 24:15-16)

ISM hired plaintiff Sandra Rumanek as a contract worker in 2002.[2] (D.I. 71 at ¶ 10; D.I.

110 at 2)  In 2005, ISM hired Rumanek into a different position as a full time employee. (*Id.*)  In

2007, ISM transferred Rumanek to perform the position of "Director of Management Institutes

and Survey Specialist," giving Rumanek significant responsibility over ISM's Summer Institute.

(*Id.*)  Rumanek reported directly to ISM President Roxanne Higgins and received periodic salary

increases and bonuses. (D.I. 71 at ¶ 12; D.I. 110 at 2)

In February 2009, Higgins and Rumanek had a discussion regarding a change in

Rumanek's position to an ISM Field Adviser position in late September or early October of

2009. (D.I. 116, Ex. 28 at FOIA407, 420, 424)  The parties dispute whether this discussion was

exploratory, or whether Higgins affirmatively offered Rumanek the position, but they agree that

no compensation for the position was established during the discussion and no contract was

executed. (*Id.*; D.I. 109, Ex. 92 at 628:9-15; D.I. 106, Ex. 85 at 206:10 – 207:21)

In preparation for ISM's 2009 and 2010 Summer Institute, Rumanek negotiated a

contract with the Hyatt hotel in Philadelphia which was intended to protect ISM's net revenue by

---

[2]  At oral argument, counsel for Rumanek repeatedly stated that Rumanek worked for ISM for a period of ten years, and subsequently indicated that her start date was in 2001, although he cited no evidence in support of this assertion and the evidence on the record consistently indicates that Rumanek began working for ISM in October 2002. To the extent this fact is disputed, it is not dispositive to the court's analysis.

tying its minimum expenditures at the hotel to the actual program registration numbers. (D.I. 116, Ex. 28 at FOIA328) However, Rumanek failed to adjust the minimum numbers with the Hyatt prior to the April 15, 2009 deadline. (*Id.* at FOIA385) As a result, ISM suffered a $200,000 loss. (D.I. 110, Ex. 1 at 51:9-21) Higgins characterized the missed deadline as a mistake and Rumanek's responsibility for the incident was excused. (D.I. 116, Ex. 28 at FOIA385; D.I. 110, Ex. 1 at 53:5-9)

Another incident occurred in April 2009, when an ISM employee, Brian Fulmer, was given a verbal warning for insubordination after he publicly scolded another ISM employee. Fulmer had previously engaged in similar conduct directed to the same co-employee and had been instructed that it should not occur in the future. (D.I. 110, Ex. 1 at 49:18 - 50:12) As of April 2009, Rumanek and Fulmer were employed at the same level of the organizational hierarchy. (*Id.* at 49:7-17)

In a meeting on May 11, 2009, Rumanek and Higgins further discussed Rumanek's transition to the Field Adviser position, and Higgins informed Rumanek that the change would need to be postponed until December 2009 or January 2010. (D.I. 116, Ex. 28 at FOIA407, 420, 424; D.I. 109, Ex. 92 at 628:9-15; D.I. 106, Ex. 85 at 206:10 – 207:21) On May 28, 2009, Rumanek sent a memorandum to Higgins addressing her concerns that Higgins was delaying her new position, among other matters. (D.I. 110, Ex. 4; D.I. 116, Ex. 28 at FOIA423) In response to Rumanek's memorandum, Higgins proposed a meeting with Rumanek, which took place on June 1, 2009. (D.I. 110, Ex. 2; D.I. 116, Ex. 28 at FOIA407-10) After the meeting, Rumanek and Higgins agreed that Rumanek could start the new position in September if she could keep her expenses within $700 per month for the first four months. (D.I. 116, Ex. 28 at FOIA420-21, 425) This agreement was documented in a June 2, 2009 memorandum from Higgins to

3

Rumanek, which stated that Rumanek would assume the role of ISM Field Adviser in the fall, on a date of Rumanek's choosing. (D.I. 103, Ex. 54 at FOIA209) The memorandum indicated that the terms of compensation would be reassessed in January 2010. (*Id.*) Although Rumanek and Higgins both initialed the memorandum, Rumanek later indicated that she was "uncomfortable with the lack of clarity of the language" and sought a formal contract. (*Id.*; D.I. 116, Ex. 28 at FOIA412)

In early September 2009, Higgins presented Rumanek with a compensation proposal, and Rumanek drafted a memorandum in response with her own proposal. (D.I. 116, Ex. 28 at FOIA428-29; D.I. 103, Ex. 54 at FOIA211) Higgins approved the proposal made by Rumanek, which permitted Rumanek to maintain her base salary of $87,138, in addition to earning commissions, for a period of twelve months beginning in October 2009. (D.I. 103, Ex. 54 at FOIA211; D.I. 101, Ex. 28 at FOIA436)

On April 6, 2010, Rumanek reported to Higgins that she had a compensation shortfall of about $6,000. (D.I. 110, Ex. 1 at 87:2-15) Higgins explained that she reduced Rumanek's base salary by $3,000 per month when Rumanek began earning commissions. (D.I. 103, Ex. 54 at FOIA218-19) When Higgins realized that the agreement included a provision stating that Rumanek's base salary would remain the same for twelve months, she reinstated Rumanek's base salary. (*Id.* at FOIA227-28) Rumanek identified other errors in her pay, which ISM corrected. (*Id.* at FOIA243; D.I. 101, Ex. 28 at FOIA545, 592)

## B. August Stoner's EEOC Complaint

On March 31, 2006, ISM hired August Stoner, an African American woman. (D.I. 71 at ¶ 13; D.I. 110 at 3) In the spring of 2007, Stoner told Rumanek that Stoner's manager was harassing her due to her race. (D.I. 105, Ex. 70 at FOIA64; D.I. 110, Ex. 3 at 12) Rumanek

verbally relayed Stoner's concerns to Higgins, who told Rumanek that Stoner's complaint was not Rumanek's concern and advised Rumanek to "drop it." (*Id.*; D.I. 110, Ex. 1 at 167:16-20) Stoner filed an EEOC complaint and a Charge of Discrimination with the Delaware Department of Labor, and Rumanek participated as a witness in Stoner's proceedings. (D.I. 106, Ex. 76 at R4554) Higgins later learned of Rumanek's participation on May 28, 2009. (D.I. 110, Ex. 1 at 35:6-9; D.I. 109, Ex. 92 at 377:15 – 378:1) Higgins testified that Rumanek's participation in Stoner's case was disappointing for her, especially after Higgins forgave Rumanek for the mistake on the Hyatt contract. (D.I. 110, Ex. 1 at 42:1 – 44:3)

## C. Rumanek's Request for Accommodation, FMLA Leave, and Termination

In November 2009, Rumanek was involved in two car accidents and suffered injuries that included tingling and weakness in her shoulders and upper arms, fatigue, and headaches. (D.I. 110, Ex. 12) As a result of the accidents, Rumanek requested permission to work from home and use a telephone headset, and ISM accommodated both requests in February 2010. (D.I. 116, Ex. 28 at FOIA191; D.I. 99, Ex. 22 at D597)

On August 6, 2010, Higgins emailed Rumanek to schedule a meeting to discuss Rumanek's compensation. (D.I. 103, Ex. 54 at FOIA241) Rumanek and Higgins planned to meet on August 23, 2010. (*Id.* at FOIA243) On August 20, 2010, Rumanek emailed Higgins a request to record the compensation meeting scheduled for August 23, 2010. (*Id.* at FOIA245) Rumanek indicated that the recording was necessary due to her short-term memory loss as a result of the November 1, 2009 accident. (*Id.*) Higgins responded on August 22, 2010, asking to reschedule the meeting. (*Id.* at FOIA248) On the following day, Higgins proposed rescheduling the compensation meeting to September 8, and asked to schedule another meeting before then to discuss the allegations of retaliation raised by Rumanek in her email dated August 20, 2010. (*Id.*

5

at FOIA250) Higgins and Rumanek agreed to meet on August 30, 2010, with the understanding that the meeting would not be recorded, but an independent third party would be present. (*Id.* at FOIA254-55; D.I. 102, Ex. 31 at D3986)

On August 25, 2010, Rumanek filed an intake questionnaire with the EEOC. (D.I. 116, Ex. 28 at FOIA189-92) On August 27, 2010, Rumanek requested FMLA leave for one month, and ISM approved the request. (D.I. 103, Ex. 54 at FOIA264) As a result, the August 30, 2010 meeting was postponed. (*Id.* at FOIA266-69) Higgins wrote a letter to Rumanek on August 30, 2010, indicating that it would be necessary to have the personnel meeting upon her return from FMLA leave and refusing to permit the use of a recording device at the meeting. (*Id.* at FOIA266-67; D.I. 110, Ex. 8) Rumanek responded that she wished to be left alone while on leave, and Higgins honored Rumanek's request. (D.I. 103, Ex. 54 at FOIA269)

On September 16, 2010, Rumanek requested an extension of her FMLA leave to November 3, 2010. (D.I. 101, Ex. 28 at FOIA694, 701) Rumanek's medical provider subsequently indicated that she would not be able to return to work until November 27, 2010. (*Id.* at FOIA713-18) ISM notified Rumanek that the November 27, 2010 date exceeded the twelve week FMLA period, which ended on November 18, 2010. (D.I. 102, Ex. 50 at D974) In her response, Rumanek did not indicate when she planned to return. (*Id.*)

Rumanek returned to work on November 18, 2010. (D.I. 104, Ex. 55 at D1081-82) The postponed review meeting between Higgins and Rumanek was rescheduled for November 24, 2010. (D.I. 101, Ex. 28 at FOIA 778-80; D.I. 106, Ex. 85 at 244:24 – 245:15) At the meeting, Higgins reiterated that tape recording of the meeting would not be permitted, but noted that ISM employee Terri Preston would attend the meeting as a record keeper. (D.I. 110, Ex. 9; D.I. 104, Ex. 62) Rumanek responded that this was unacceptable, and she refused to participate in the

6

meeting without a tape recorder. (*Id.*; D.I. 104, Ex. 67) Higgins cautioned Rumanek that her failure to participate in the meeting would be considered an act of insubordination. (*Id.*) Higgins sent Rumanek a letter later that day terminating her employment with ISM. (D.I. 104, Ex. 65) Both ISM and Rumanek notified the EEOC of Rumanek's termination. (*Id.*, Ex. 67) Higgins testified that Rumanek had received one verbal warning for insubordination during her employment with ISM prior to her termination. (D.I. 110, Ex. 1 at 76:2 – 77:5)

## III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey,* 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986)). Pursuant to Rule 56(c)(1), a party asserting that a fact is genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460–61 (3d Cir.1989). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris,* 550 U.S. 372, 380 (2007); *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. at 322.

## IV. DISCUSSION

### A. Title VII and the DDEA[3]

To establish a *prima facie* claim for retaliation under Title VII, Rumanek must show that: (1) she engaged in a protected activity; (2) ISM took an adverse employment action after or contemporaneous with the protected activity; and (3) the protected activity and the adverse employment action were causally linked. *See Moore v. Phila.,* 461 F.3d 331, 340-41 (3d Cir. 2006); *Weston,* 251 F.3d at 430; *see also Wellman v. Dupont Dow Elastomers, L.L.C.,* 414 F. App'x 386, 389 (3d Cir. 2011). "In the absence of direct evidence of retaliation, retaliation

---

[3] The court notes that there are discrepancies between the issues raised in the parties' summary judgment briefing and the issues presented in the proposed pretrial order. The court has addressed the pending motion based on the summary judgment briefing and the portions of the record referenced in the briefing. However, "[t]he court will not advocate for [the parties] by mustering the evidence and making arguments when their counsel has neglected to do so." *Benford v. City of Minneapolis,* 2012 WL 6200365, at *2 (D. Minn. Dec. 12, 2012).

claims . . . typically proceed under the *McDonnell Douglas* framework."[4]  *Fasold v. Justice*, 409

F.3d 178, 188 (3d Cir. 2005).  Under the *McDonnell Douglas* framework, once Rumanek

establishes a *prima facie* case of retaliation, ISM has the burden to "articulate some legitimate,

nondiscriminatory reason" for terminating Rumanek.  *Woodson v. Scott Paper Co.*, 109 F.3d

913, 920 (3d Cir. 1997).  The burden then shifts back to Rumanek to establish that there is

sufficient evidence for a reasonable factfinder to "(1) disbelieve the employer's articulated

legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than

not a motivating or determinative cause of the employer's action."  *Fuentes v. Perskie*, 32 F.3d

759, 764 (3d Cir. 1994).

> [T]he plaintiff cannot simply show that the employer's decision was wrong or
> mistaken . . . Rather, the non-moving plaintiff must demonstrate such weaknesses,
> implausibilities, inconsistencies, incoherencies, or contradictions in the
> employer's proffered legitimate reasons for its action that a reasonable factfinder
> could rationally find them "unworthy of credence" and hence infer "that the
> employer did not act for [the asserted] non-discriminatory reasons."

*Id.* at 765 (internal citations omitted).

Under Third Circuit precedent, "temporal proximity between the employee's protected

activity and the alleged retaliatory action may satisfy the causal link element of a prima facie

retaliation claim, at least where the timing is unusually suggestive of retaliatory motive."  *Shaner*

---

[4]  Rumanek alleges that the court need not apply the *McDonnell Douglas* analysis because she
has produced direct evidence of discriminatory animus, citing the "motivating factor" standard
set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).  (D.I. 110 at 21)  Rumanek fails
to acknowledge that the mixed motive analysis set forth in *Price Waterhouse*, and subsequently
codified in the Civil Rights Act of 1991, is not applicable to retaliation claims.  *See Univ. of Tex.
Southwestern Med. Center v. Nassar*, 133 S. Ct. 2517, 2529-30 (2013) ("When Congress wrote
the motivating-factor provision in 1991, it chose to insert it as a subsection within § 2002e-2,
which contains Title VII's ban on status-based discrimination . . . and says nothing about
retaliation . . . This fundamental difference in statutory structure renders inapposite decisions
which treated retaliation as an implicit corollary of status-based discrimination.").  The Supreme
Court's decision in *Nassar* issued more than three months before Rumanek's answering brief
was filed, and is cited in Rumanek's brief.  (D.I. 110 at 19)

*v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000). However, temporal proximity alone is not always sufficient to overcome a defendant's allegations of pretext. *See Andes v. N.J. City Univ.*, 419 F. App'x 230, 234 (3d Cir. 2011) (concluding that district court erred in focusing exclusively on temporal proximity when it found no causal connection between the protected activity and the alleged retaliatory conduct); *Kachmar v. SunGard Data Sys.*, 109 F.3d 173, 178 (3d Cir. 2011) ("It is important to emphasize that it is causation, not temporal proximity, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn.").

The Supreme Court has recently clarified that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. S. Med. Ctr. v. Nassar*, ---- U.S. ----, 133 S. Ct. 2517, 2533 (June 24, 2013). The Supreme Court expressed concern that a "lessened causation standard would make it far more difficult to dismiss dubious claims at the summary judgment stage," which would be "inconsistent with the structure and operation of Title VII." *Id.* at 2532. Under this standard, an employee establishes pretext by showing that the adverse action would not have occurred "but for" the employer's retaliatory reason for the action. *Id.* at 2533-34. Therefore, Rumanek's protected activity must be the "but-for" cause of ISM's alleged retaliatory action under the causation prong of the *prima facie* case.

The parties agree that Rumanek was subject to an adverse employment action when she was terminated. However, the parties dispute whether Rumanek participated in a protected activity with respect to the Stoner matter and her threat to file her own EEOC complaint. The

parties also dispute whether Rumanek has established a sufficient causal link between the protected activities and the adverse employment action.

### 1.    Protected activity

According to ISM, Rumanek cannot show that she engaged in protected activity because her allegations failed to place ISM on notice of the protected theme, and because no reasonable person could believe that the reported actions involved unlawful discrimination or retaliation. (D.I. 96 at 23-25)  ISM's argument fails with respect to Rumanek's participation in the Stoner matter because Rumanek placed ISM on notice of the protected nature of her conduct.  Rumanek informed Higgins of her involvement in the Stoner matter in her May 28, 2009 memorandum (D.I. 110, Ex. 4 at D450), and she previously had discussions with Higgins in which she expressed concern about Stoner's allegations (D.I. 105, Ex. 70 at FOIA64; D.I. 110, Ex. 3 at 12 and Ex. 1 at 167:16-20).  A reasonable jury could find that these actions were sufficient to place ISM on notice of the protected nature of her conduct.

ISM's argument also fails with respect to Rumanek's August 23, 2010 email to Higgins threatening to file an EEOC complaint.  It is well-established that threatening to file an EEOC charge constitutes protected activity.  "Protected activity for purposes of a prima facie case of retaliation does not mean a formal action against the employer." *LeBoon v. Lancaster Jewish Community Ctr. Ass'n*, 503 F.3d 217, 232 n.9 (3d Cir. 2007).  A reasonable jury could find that Rumanek's May 28, 2009 memorandum and her August 20, 2010 email placed ISM on notice of her intent to commence EEOC proceedings on her own behalf prior to her August 23, 2010 email, and the August 23, 2010 email itself clearly states Rumanek's intention to engage in protected activity.  (D.I. 103, Ex. 54 at FOIA245)

Moreover, Rumanek's belief that she had a basis for participating in the Stoner matter[5]

and threatening to file her EEOC complaint was not objectively unreasonable. An employee

"must hold an objectively reasonable belief, in good faith, that the activity they oppose is

unlawful under Title VII." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (citing

*Clark County v. Breeden*, 532 U.S. 268, 271 (2001)). Although Rumanek's promotion

ultimately went into effect on time, she experienced multiple compensation issues thereafter

(D.I. 103, Ex. 54 at FOIA218-19, 243; D.I. 101, Ex. 28 at FOIA545, 592), and Higgins did not

notify Rumanek before reducing her paycheck by an amount that had not previously been

discussed (D.I. 103, Ex. 54 at FOIA218-19; D.I. 110, Ex. 1 at 87:2 – 91:20). Regardless of the

ultimate merits of Rumanek's EEOC activity, a reasonable jury could find that her belief that she

was participating in protected activity was objectively reasonable. *See Davis v. Nat'l R.R.*

*Passenger Corp.*, 733 F. Supp. 2d 474, 492-93 (D. Del. 2010) ("An adverse employment action

may be . . . any action that alters an employee's compensation, terms, conditions, or privileges of

employment.").

---

[5] ISM alleges that Rumanek admitted that she did not believe Stoner was terminated as a result of racial discrimination, citing an email that Rumanek wrote to ISM employee Weldon Burge. (D.I. 98, Ex. 16 at R643-44) The pertinent portion of the email reads as follows: "August became a person non-grata simply because she 'disobeyed' an order from Roxanne not to park in a portion of two public streets, after all. You and I were witnesses in a complaint that led to findings of cause against Roxanne and Terry for discrimination and harassment." (*Id.*) Rumanek places the word "disobeyed" in quotations, stresses that the streets were public and presumably anyone would be permitted to park there, and characterizes her participation as a witness in a complaint alleging discrimination and harassment. A reasonable jury could construe this email in a manner that is not inconsistent with Rumanek's professed belief that Stoner was discriminated against because of her race. Rumanek reiterated her belief that Stoner was discriminated against because of her race in her testimony regarding the Stoner matter. (D.I. 109, Ex. 92 at 621:19-22)

12

## 2. Causation

Next, ISM contends that Rumanek cannot show the requisite causal link to establish her

*prima facie* case for retaliation. (D.I. 96 at 26-28) Specifically, ISM alleges that the timing of

Rumanek's termination is not unduly suggestive of retaliatory motive because Rumanek was

terminated more than a year after she began to accuse Higgins of retaliation, and more than three

months after she threatened to file her complaint with the EEOC. (*Id.* at 26-27) ISM further

alleges that Rumanek's insubordination was unprecedented, and ISM would have terminated

Rumanek prior to November 2010 if it had been motivated by retaliation. (*Id.* at 27) According

to ISM, Rumanek has failed to produce evidence suggesting that her threat to file an EEOC

complaint was the but-for cause of her termination, and not her insubordination. (*Id.* at 28)

In response, Rumanek contends that Higgins admitted Rumanek's threat of filing an

EEOC complaint in her August 23, 2010 email "had an influence" on Higgins' decision to

terminate Rumanek. (D.I. 110 at 20-21) Moreover, Rumanek alleges that her sudden

termination was inconsistent with ISM's progressive discipline policy and represented disparate

treatment compared to other similarly situated employees accused of insubordination. (*Id.* at 21)

In light of this evidence, Rumanek alleges that ISM's proffered reason for terminating Rumanek

was pretextual. (*Id.* at 24)

The court concludes that no reasonable juror could find that Rumanek's participation in

the Stoner matter was the but-for cause of her termination. Rumanek notified Higgins that she

served as a witness on Stoner's behalf in her May 28, 2009 memorandum (D.I. 110, Ex. 4), but

she was not terminated until November 24, 2010, more than one and a half years later (D.I. 104,

Ex. 65). Following the notification Rumanek provided in the May 28, 2009 memorandum,

Higgins agreed to allow Rumanek to begin the Field Adviser position on a date of her choosing

13

and approved Rumanek's proposed compensation plan. (D.I. 103, Ex. 54 at FOIA209, 211; D.I. 101, Ex. 28 at FOIA436) Higgins' characterization of Rumanek's participation as a witness on behalf of Stoner as "hard" and "a little disappointing" is insufficient to establish a retaliatory motive in light of the facts on the record as a whole. (D.I. 110, Ex. 1 at 42:4 – 44:3) For these reasons, ISM's motion for summary judgment is granted with respect to Rumanek's Title VII and DDEA claims based on Rumanek's participation in the Stoner matter.

However, viewing the evidence in the light most favorable to Rumanek as the non-moving party, the court denies summary judgment on Rumanek's Title VII and DDEA causes of action as they pertain to her threat to file an EEOC complaint in her August 23, 2010 email. As the Second Circuit recently explained,

> "[B]ut-for" causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive . . . . A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its actions. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.

*Zann Kwan v. Andalex Group LLC*, ---- F.3d ----, 2013 WL 6570609, at \*9 (2d Cir. Dec. 16, 2013) (internal citations omitted). As a preliminary matter, the court notes that ISM has met its relatively light burden under the *McDonnell Douglas* analysis by claiming that the decision to terminate Rumanek was made as a result of Rumanek's insubordination at the November 24, 2010 meeting. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997) (citing *Fuentes*, 32 F.3d at 763) ("The defendant's burden at this stage is relatively light: it is satisfied if the defendant articulates any reason for the discharge; the defendant need not prove that the articulated reason actually motivated the discharge."). However, the evidence presented by

14

Rumanek is sufficient to create a question of fact as to whether those reasons were merely a pretext for retaliation.

In the present case, a genuine issue of material fact exists as to the proper interpretation of Higgins' deposition testimony. A reasonable jury could construe Higgins' deposition testimony to signify that it was Rumanek's threat to file an EEOC charge which "had an influence" on Higgins' decision to terminate Rumanek. Higgins also testified in her deposition that Rumanek's insubordination "had an influence" on her decision to terminate Rumanek. (D.I. 110, Ex. 1 at 161:16 – 162:22) These inconsistent explanations for Rumanek's termination must be resolved by the finder of fact before a determination can be made as to whether Rumanek's EEOC complaint was a but-for cause of her termination.[6] If the jury adopts Rumanek's proposed interpretation of Higgins' deposition testimony, it could reasonably infer that the explanation given by ISM was pretextual, and the threat to file an EEOC complaint was a but-for cause of Rumanek's termination. Viewing the evidence in the light most favorable to Rumanek, as required on a motion for summary judgment, the court concludes that there is a sufficient dispute of fact to require denial of the summary judgment motion on the Title VII retaliation claim based on Rumanek's threat to file an EEOC complaint.

Other evidence on the record asserted by Rumanek in support of her Title VII and DDEA claims does not establish a genuine issue of material fact and may be excluded as a matter of law. First, ISM's failure to follow the steps set forth in its progressive discipline policy does not

---

[6] ISM also highlights Rumanek's statement to the EEOC that her "employment with ISM was terminated by company President Roxanne Higgins because [she] refused to participate in a review meeting with her and Business Manager Terri Preston without a tape recorder," as evidence that Rumanek herself believed she was terminated because of her insubordination. (D.I. 104, Ex. 67 at FOIA110) The court will reserve for the jury the issue of whether Rumanek's statement was merely a repetition of the reason ISM gave for her termination, or whether Rumanek intended to represent to the EEOC that she subjectively believed she was terminated for insubordination.

15

establish a genuine issue of material fact. The parties do not dispute the fact that ISM's

discipline policy contains a provision stating that "ISM reserves the right to bypass disciplinary

steps and base its disciplinary action on the severity, frequency or combination of infractions

when circumstances warrant immediate action." (D.I. 110, Ex. 1 at 24:9-13) Although an

employer's departure from its employment policies can constitute circumstantial evidence of

discrimination, "when a progressive discipline policy permits the employer to exercise discretion

in discharging an employee without exhausting all of the policy's steps, failure to follow all of

the steps does not suggest a discriminatory motive." *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d

344, 352-53 (7th Cir. 2009); *see also Rzucidlo v. McHugh*, 2013 WL 5408651, at *6 (M.D. Pa.

Sept. 25, 2013) (finding that defendant was entitled to judgment as a matter of law where

plaintiff produced no evidence of a mandatory progressive discipline policy); *Spring v. Sealed

Air Corp.*, 2011 WL 4402600, at *1 (E.D. Pa. Sept. 22, 2011) (employer reserved the right to

skip steps in progressive discipline policy if necessary). Because ISM's discipline policy permits

the exercise of discretion in discharging an employee without exhausting all of the policy's steps,

no reasonable fact finder could conclude that ISM violated its progressive discipline policy by

terminating Rumanek.

Next, ISM's allegedly disparate treatment of Fulmer is likewise insufficient to establish a

genuine issue of material fact. Fulmer was reprimanded for publicly raising his voice at a

coworker, whereas Rumanek's insubordination was directed at her supervisor and the president

of the company. Moreover, Rumanek was expressly warned at the time of the incident that her

refusal to participate in the personnel meeting would be treated as an act of insubordination, and

yet she persisted in her refusal. (D.I. 104, Ex. 67 at FOIA111) In contrast, Fulmer was not

16

aware that Higgins considered his conduct in April 2009 to be insubordinate. (D.I. 112, Ex. 102 at 42:1-10; D.I. 110, Ex. 1 at 50:5-12) For these reasons, Fulmer is not a valid comparator.

Moreover, a jury could not reasonably find that Higgins' August 25, 2010 email to Rumanek constitutes evidence of retaliation. In the email, Higgins states, "[y]our communications with me have taken on a hostile and threatening tone, which is counterproductive." (D.I. 110, Ex. 7 at D812) Higgins' observation regarding Rumanek's tone does not suggest that Higgins planned to terminate Rumanek based on her protected activity. In fact, the August 25, 2010 email stresses that Rumanek's "feelings that [she] ha[s] been treated unfairly" are important to Higgins, and Higgins expresses a desire to "move forward in a productive and respectful working relationship." (*Id.*) The email chain in which Higgins' August 25, 2010 email appears reveals that Higgins had attempted to schedule a personnel meeting with Rumanek multiple times and was repeatedly met with resistance. (D.I. 110, Ex. 7) No reasonable jury could conclude that the August 25, 2010 email expresses a retaliatory motive to terminate Rumanek's employment.

ISM raised an issue as to whether equitable wage-related damages are available to Rumanek under her Title VII retaliation claim.[7]  Rumanek failed to address the issue of damages in her answering brief. The court will defer consideration of this matter until the pretrial conference.

## B.    ADA/DPDEP Retaliation

Section 12203(a) of the ADA prohibits discrimination against an employee when he "has opposed any act or practice made unlawful by this Act or because such individual made a charge,

---

[7] Because compensatory and punitive damages are also available to a plaintiff asserting a Title VII retaliation claim, the court's decision on the issue of equitable remedies would not be dispositive to the cause of action at this stage.

17

testified, assisted, or participated in any manner in an investigation . . . under this Act." 42

U.S.C. § 12203(a). "Prohibited discrimination under the ADA includes retaliation against an

employee for requesting an accommodation." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177,

188 (3d Cir. 2010).

To establish a prima facie case of retaliation under the ADA, Rumanek must show that:

(1) she engaged in protected activity; (2) there was an adverse action by the employer either after

or contemporaneous with the employee's protected activity; and (3) there was a causal

connection between the employee's protected activity and the employer's adverse action.

*Yovtcheva v. City of Phila. Water Dep't*, 518 F. App'x 116, 123 (3d Cir. 2013) (quoting *Krouse*

*v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). As with Rumanek's Title VII and

DDEA claims, the *McDonnell Douglas* framework applies to ADA retaliation claims. *Williams*

*v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 n.3 (3d Cir. 2004). As a result, the burden

shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment

action if the employee establishes a *prima facie* claim. *Shellenberger v. Summit Bancorp, Inc.*,

318 F.3d 183, 187 (3d Cir. 2003). If ISM successfully meets this burden of production,

Rumanek must show that the otherwise legitimate reasons advanced by ISM are actually a

pretext to mask retaliatory animus. *See Krouse*, 126 F.3d at 501. "[T]ermination clearly fulfills

the second prong of the prima facie case for a retaliation claim." *Abramson v. William Paterson*

*Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001).

As with the Title VII and DDEA claims, the parties dispute the first and third elements of

the *prima facie* case. In support of its motion for summary judgment on the ADA and DPDEP

retaliation claims, ISM alleges that Rumanek lacked the required good faith and reasonable

belief that she was disabled when she requested to record the personnel meeting. (D.I. 96 at 31)

Specifically, ISM contends that Rumanek stated her desire to record the meeting for purposes of her EEOC proceedings, she informed the EEOC that she did not have a disability, and she had just received objective test results prior to her request which showed that her memory was average to above average. (*Id.* at 31-32) With respect to causation, ISM alleges that Rumanek's claim fails due to a lack of temporal proximity because Rumanek made her first request for accommodation about one year prior to her termination, and her request to record was made three months before she was terminated. (*Id.* at 32) According to ISM, Higgins granted Rumanek's leave requests, allowed her to continue receiving windfall compensation, and permitted her to record calls with clients to the extent permitted by law, following Rumanek's request to record the personnel meeting. (*Id.* at 32-33)

In response, Rumanek contends that Higgins knew her request to record the meeting was an ADA accommodation request, and yet she declined to grant it. (D.I. 110 at 26) Rumanek then reiterates that Higgins claimed Rumanek's email regarding her EEOC complaint "had an influence" on Higgins' decision to terminate Rumanek. (*Id.* at 26-27) Rumanek also references the deposition testimony of Terri Preston, who testified that she never doubted that Rumanek requested the accommodation in good faith. (*Id.* at 27)

"[U]nlike a general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff has a 'reasonable, good faith belief that [he] was entitled to request the reasonable accommodation [he] requested.'" *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) (citing *Williams v. Phila. Housing Authority Police Dep't*, 380 F.3d 751, 759 n.2 (3d Cir. 2004)). The Third Circuit has specified that the absence of a good faith request for accommodation is fatal to an ADA claim:

> [T]he protection from retaliation afforded under the ADA does not extend to an
> employee whose request is motivated by something other than a good faith belief
> that he/she needs an accommodation. Congress clearly did not intend to extend
> the reach of the ADA's umbrella to employees whose motivation for requesting
> an accommodation is something other than a good faith belief that an
> accommodation under the Act is necessary or appropriate.

*Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003).

The court concludes that no reasonable jury could find that Rumanek's request for

accommodation was made in good faith. The record shows that Rumanek suffered injuries in an

auto accident in November 2009 and immediately experienced symptoms from the accidents,

including memory issues. (D.I. 98, Ex. 19 at D533; D.I. 99, Ex. 20) Rumanek requested

permission to work from home and use a headset to accommodate her limitations shortly after

the accidents, and ISM granted both requests by March 2010. (D.I. 99, Exs. 22 & 23) Despite

the consistent nature of Rumanek's reported cognitive complaints from the time of her

November 2009 auto accident, and despite ISM's demonstrated willingness to accommodate her

limitations, Rumanek did not claim that she needed the use of a recording device to assist with

her memory until August 2010. (D.I. 110, Ex. 6 at D800)

Moreover, Rumanek's request to record was limited solely to the personnel meeting.

Higgins permitted Rumanek to record telephone conversations with clients to assist in the

performance of her essential job duties, but Rumanek ignored the offer. (D.I. 110, Ex. 8 at

D863; D.I. 103, Ex. 54 at FOIA269) When viewed in conjunction with evidence that Rumanek

openly admitted her request for accommodation was made in part to bolster her EEOC claim, the

court concludes that no reasonable jury could find that Rumanek's request was made in good

faith. (D.I. 104, Ex. 67 at FOIA110)

In July 2010, Rumanek received medical documentation confirming that her memory was average to above average prior to making her request for an accommodation, and disclosed to the EEOC on August 25, 2010 that she did not have a disability at that time but had previously had one. (D.I. 99, Ex. 25 at FOIA147-48; D.I. 116, Ex. 28 at FOIA191) This evidence demonstrates that Rumanek did not subjectively believe that she was disabled, and she did not require an accommodation for her memory to perform the essential functions of her job.

Preston's testimony that she believed Rumanek requested the accommodation in good faith does not overcome the fact that Rumanek herself did not believe in good faith that she required the use of a recording device to accommodate her disability. *See Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) (requiring the **plaintiff** to have a "reasonable, good faith belief that [she] was entitled to request the reasonable accommodation [she] requested."). In light of the foregoing, no reasonable jury could conclude that Rumanek's request to record was made in good faith, and the court need not reach the issue of causation. Therefore, ISM's motion for summary judgment is granted to the extent it pertains to Rumanek's ADA and DPDEP claims.

ISM raised an issue as to whether damages are available to Rumanek under the ADA. Rumanek failed to address the issue of damages in her answering brief. In light of the foregoing determination on the issue of liability, the court need not reach the issue of damages.

### C.     FMLA Retaliation

Under the FMLA, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual" for exercising her FMLA rights. 29 U.S.C. § 2615(a)(2). Employers may not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c).

When considering retaliation claims under the FMLA, the court must use the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Lipscomb v. Elec. Data Sys. Corp.*, 462 F. Supp. 2d 581, 587-88 (D. Del. 2006). A prima facie case of retaliation requires an employee to show that: (1) she took FMLA leave; (2) she suffered an adverse employment action; and (3) the adverse decision was causally related to her leave. *See Lipscomb*, 462 F. Supp. 2d at 588 (citing *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004)). To defeat a motion for summary judgment, a plaintiff must point to some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. To accomplish this, a plaintiff must show a defendant's reasons are so weak, incoherent, implausible, or inconsistent that they lack credibility. *See id.* at 765.

ISM alleges that, although Rumanek was terminated shortly after returning from FMLA leave, the evidence shows that Higgins planned to continue with Rumanek's employment until Rumanek was insubordinate during the November 24, 2010 meeting. (D.I. 96 at 34) According to ISM, no evidence of record shows that Rumanek's FMLA leave was the but for cause of her termination. (*Id.*) Rumanek responds that the temporal proximity of Rumanek's FMLA leave to her termination and the substantial showing of pretext is sufficient to establish a claim for FMLA retaliation. (D.I. 110, 28-29)

Rumanek has failed to make out a *prima facie* case of causation pertaining to her FMLA retaliation claim. Although Rumanek's return from FMLA leave on November 18, 2010 and her termination on November 24, 2010 are temporally proximate, timing alone does not give rise to an inference of retaliation in this matter. *See Schlifke v. Trans World Entm't Corp.*, 479 F. Supp.

22

2d 445, 452 (D. Del. 2007) (citing *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 501 (3d Cir. 1991)).

"Only when the facts are unusually suggestive of retaliatory motive may temporal proximity

alone support an inference of causation." *Escanio v. United Parcel Serv.*, ---- F. Appx. ----, 2013

WL 4840501, at *4 (3d Cir. 2013) (internal quotations omitted). No other evidence suggests a

retaliatory motive based on Rumanek's FMLA leave. Instead, Rumanek's leave requests were

granted, Higgins welcomed Rumanek back to work upon her return, Rumanek's accounts were

reactivated, and Higgins scheduled a review meeting with Rumanek along with the other

employees. (D.I. 102, Ex. 37; Ex. 46; D.I. 104, Exs. 56-59)

In addition to her arguments based on the temporal proximity of the two events,

Rumanek refers to the pretext arguments she previously alleged in connection with her other

claims. (D.I. 110 at 28) These arguments include Rumanek's contention that ISM's proffered

reason for her termination is not legitimate due to Higgins' testimony that Rumanek's August 23,

2010 email "had an influence" on her decision to terminate Rumanek. (D.I. 110 at 26-27)

Rumanek's August 23, 2010 email was sent prior to Rumanek's first request for FMLA leave,

and was cited in connection with her reference to her EEOC complaint. Therefore, this evidence

does not support Rumanek's contention that her request for FMLA leave was the actual reason

that she was terminated. Rumanek does not reference any conduct by ISM following her request

for FMLA leave that would suggest ISM's proffered reasons for her termination were pretextual.

Therefore, ISM's motion for summary judgment on Rumanek's FMLA claim is granted.

ISM raised an issue as to whether damages are available to Rumanek under the FMLA.

Rumanek failed to address the issue of damages in her answering brief. In light of the foregoing

determination on the issue of liability, the court need not reach the issue of damages.

## IV. CONCLUSION

For the foregoing reasons, the court shall grant-in-part and deny-in-part ISM's motion for summary judgment. (D.I. 96) Rumanek asserts five causes of action for retaliation against ISM. Specifically, the court grants ISM's motion for summary judgment with respect to the ADA/DPDEP and FMLA retaliation claims, and denies ISM's motion with respect to the Title VII/DDEA retaliation claim based on the August 23, 2010 email in which Rumanek threatens to file an EEOC complaint. An order consistent with this Memorandum Opinion shall issue.

Dated: January 10, 2014

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE